UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | | |
|---|---|---|
| KAREN HERNANDEZ, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| vs. | ) | Case No.  4:17-cv-00046-HNJ |
| | ) | |
| COMMISSIONER, SOCIAL SECURITY | ) | |
| ADMINISTRATION, | ) | |
| | ) | |
| Defendant | ) | |

## MEMORANDUM OPINION

Plaintiff Karen Hernandez seeks judicial review pursuant to 42 U.S.C. § 405(g) of an adverse, final decision of the Commissioner of the Social Security Administration ("Commissioner" or "Secretary"), regarding her claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). The undersigned has carefully considered the record, and for the reasons stated below, **AFFIRMS** the Commissioner's decision.[1]

## LAW AND STANDARD OF REVIEW

To qualify for disability benefits and establish entitlement for a period of disability, the claimant must be disabled as defined by the Social Security Act and the

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties have voluntarily consented to have a United States Magistrate Judge conduct any and all proceedings, including the entry of final judgment.

Regulations promulgated thereunder. The Regulations[2] define "disabled" as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a). To establish an entitlement to disability benefits, a claimant must provide evidence of a "physical or mental impairment" which "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

In determining whether a claimant suffers a disability, the Commissioner, through an Administrative Law Judge (ALJ), works through a five-step sequential evaluation process. *See* 20 C.F.R. § 404.1520. The burden rests upon the claimant on the first four steps of this five-step process; the Commissioner sustains the burden at step five, if the evaluation proceeds that far. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999).

---

[2] The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499. Although the Social Security Administration amended the regulations on January 17, 2017, the amendment applies only to Social Security applications filed after the effective date, March 27, 2017. *Watkins v. Berryhill*, No. 7:16-CV-242-FL, 2017 WL 3574450, at *4 (E.D.N.C. Aug. 1, 2017), *report and recommendation adopted*, No. 7:16-CV-242-FL, 2017 WL 3568406 (E.D.N.C. Aug. 17, 2017); *Jordan v. Comm'r of Soc. Sec.*, No. 1:17-CV-33, 2017 WL 3034386 (N.D. Ohio July 18, 2017)(applying version of Listing 12.05(C) in effect at time of ALJ's decision, but finding error in ALJ analysis and remanding for new hearing and analysis under new version). Accordingly, the undersigned relies upon the prior versions in effect at the time of the ALJ's decision.

In the first step, the claimant cannot be currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). Second, the claimant must prove the impairment is "severe" in that it "significantly limits [the] physical or mental ability to do basic work activities . . . ." *Id.* at § 404.1520(c).

At step three, the evaluator must conclude the claimant is disabled if [the] impairments meet or are medically equivalent to one of the impairments listed at 20 C.F.R. Part 404, Subpart P, App. 1, §§ 1.00–114.02. *Id.* at § 404.1520(d). If a claimant's impairment meets the applicable criteria at this step, that claimant's impairments would prevent any person from performing substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1525, 416.920(a)(4)(iii). That is, a claimant who satisfies steps one and two qualifies automatically for disability benefits if they suffer from a listed impairment. *See Jones*, 190 F.3d at 1228 ("If, at the third step, [the claimant] proves that [an] impairment or combination of impairments meets or equals a listed impairment, [the claimant] is automatically found disabled regardless of age, education, or work experience.") (citing 20 C.F.R. § 416.920).

If the claimant's impairment or combination of impairments does not meet or medically equal a listed impairment, the evaluation proceeds to the fourth step where the claimant demonstrates an incapacity to meet the physical and mental demands of past relevant work. 20 C.F.R. § 404.1520(e). At this step, the evaluator must determine whether the plaintiff has the residual functional capacity ("RFC") to perform

the requirements of his past relevant work. *See id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant's impairment or combination of impairments does not prevent performance of past relevant work, the evaluator will determine the claimant is not disabled. *See id.*

If the claimant is successful at the preceding step, the fifth step shifts the burden to the Commissioner to prove, considering claimant's RFC, age, education and past work experience, whether the claimant is capable of performing other work. 20 C.F.R. §§ 404.1520(f)(1). If the plaintiff can perform other work, the evaluator will not find the claimant disabled. *See id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); see also 20 C.F.R. §§ 404.1520(g), 416.920(g). If the plaintiff cannot perform other work, the evaluator will find the claimant disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 416.920(a)(4)(v), 416.920(g).

The court reviews the ALJ's "'decision with deference to the factual findings and close scrutiny of the legal conclusions.'" *Parks ex rel. D.P. v. Comm'r, Social Sec. Admin.*, 783 F.3d 847, 850 (11th Cir. 2015) (quoting *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)). The court must determine whether substantial evidence supports the Commissioner's decision and whether the Commissioner applied the proper legal standards. *Winschel v. Comm'r of Social Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). Although the court must "scrutinize the record as a whole . . . to determine if the decision reached is reasonable and supported by substantial evidence," *Bloodsworth v.*

4

*Heckler,* 703 F.2d 1233, 1239 (11ᵗʰ Cir. 1983) (citations omitted), the court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment" for that of the ALJ. *Winschel*, 631 F.3d at 1178 (citations and internal quotation marks omitted). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* (citations omitted). Nonetheless, substantial evidence exists even if the evidence preponderates against the Commissioner's decision. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11ᵗʰ Cir. 2005).

## FACTUAL AND PROCEDURAL HISTORY

In his June 21, 2016, decision, the ALJ first determined that Ms. Hernandez met the Social Security Act's insured status requirements through September 30, 2017. The ALJ further found that Hernandez had not engaged in substantial gainful activity since February 28, 2011, the alleged onset date. At step two, the ALJ identified the following severe impairments: hypermobility disorder; temporomandibular joint (TMJ); anxiety; osteoarthritis; depression; post-traumatic stress disorder (PTSD); insomnia; and chronic obstructive pulmonary disease (COPD). (Tr. 25).

The ALJ concluded at step three that Hernandez's combination of severe impairments did not meet or medically equal any impairment for presumptive disability listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 26). At step four, the ALJ determined Hernandez exhibited no past relevant work. The ALJ proceeded to step

5

five, finding Hernandez's RFC allows her to perform light unskilled work as defined in 20 C.F.R. §§ 404.1567(b), with certain limitations.[3] (Tr. 28). The ALJ relied on the VE's testimony that Hernandez could perform such jobs as garment sorter, inspector/hand packager, or laundry folder. (Tr. 32).

On November 8, 2016, the Appeals Council denied review, which deems the ALJ's decision as the Commissioner's final decision. (Tr. 1). Ms. Hernandez filed her complaint with the court seeking review of the ALJ's decision. (Doc. 1).

## ANALYSIS

In this appeal, Ms. Hernandez contends substantial evidence does not support the ALJ's decision. Specifically, she faults the ALJ for assigning no weight to the opinion of Hernandez's treating physician; substituting his own opinion for that of the Commissioner's examining psychiatrist; concluding that Hernandez does not meet Listings 12.04 and 12.06; and providing inadequate reasoning for discounting Hernandez's credibility regarding the severity of her pain symptoms. After

---

[3] The ALJ described the following limitations:

such work should not require complex instructions or procedures; there should be no climbing of ropes, ladders, or scaffolds; no work at unprotected heights or with hazardous machinery; occasional stooping, crouching, crawling, or kneeling; frequent handling bilaterally; no concentrated exposure to dust, fumes, or other respiratory irritants; frequent interaction with co-workers and supervisors; occasional contact with the general public; and the work not require the reading of fine print or similar visual activity.

consideration of the record and the ALJ's decision, the court finds substantial evidence supports the ALJ's determination.

## A. The ALJ Assigned Proper Weight to the Treating Physician's Opinion

The ALJ must give "substantial or considerable weight" to the opinion of a treating physician "unless 'good cause' is shown." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2003) (citing *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)). Good cause exists when: (1) the evidence did not bolster the treating physician's opinion; (2) evidence supported a contrary finding; or (3) a treating physician's opinion was conclusory or inconsistent with the doctor's own medical records. *Id.* An ALJ must clearly articulate the reasons for affording less weight to a treating physician's opinions. *Id.* An ALJ does not commit reversible error when (1) he articulates specific reasons for declining to give the treating physician's opinion controlling weight, and (2) substantial evidence supports these findings. *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005) (*per curiam*).

Hernandez contends the ALJ erred in giving no weight to the opinion of her treating physician, Dr. Larry Johnston. After examining Hernandez in April 2013, Dr. Johnston opined that Hernandez's chronic medical conditions render her "totally and permanently unable to carry out gainful employment." (Tr. 575). The ALJ found Dr. Johnston's opinion inconsistent with and unsupported by Hernandez's treatment records, which the ALJ stated provided no evidence of functional limitations other than

7

her list of symptoms and diagnoses. Furthermore, the ALJ declared that Dr. Johnston's opinion invades the Commissioner's province.

The court finds the ALJ possessed good cause to give no weight to Dr. Johnston's opinion for several reasons. Evidence in the record fails to support Dr. Johnston's opinion, including his own treatment notes. Hernandez first reported to Dr. Johnston in March 2010 with complaints of right hip pain that caused tingling in her right leg. (Tr. 447). She indicated that Lortab made the pain tolerable. From 2010 to 2013, she visited Dr. Johnson nearly every month. Throughout these visits, she consistently reported that her pain medication helped her TMJ and anxiety. (Tr. 442, 444, 445). With medication, her TMJ and joint pain ranged from a 2/10 to 3/10. (Tr. 419, 438, 442). Hernandez reported that she maintained adequate pain control and could better cope with daily stressors. (Tr. 438). Throughout 2011, Dr. Johnston reported that Hernandez presented a calm mood and stable nerves. (Tr. 413, 420, 423). In August 2011, Hernandez began complaining of plantar fasciitis, but she indicated that her pain decreased to a 3/10 with medication. (Tr. 426). She reported concerns about joint pain and possible arthritis, but she also stated that medication helped control it and enabled her to rest. (Tr. 413, 423).

In January 2012, Hernandez complained of joint pain to Dr. Robert Hunt. She reported slight swelling in her hands, difficulties with cramping in her hands and feet, and snapping in peripheral joints. Dr. Hunt diagnosed Hernandez with joint

hypermobility and arthralgias, but he also stated that the symptoms could indicate evolving inflammatory arthritis. (Tr. 330-31). A few weeks later, Hernandez returned to Dr. Johnston chiefly with complaints of TMJ, anxiety, and insomnia. However, she stated that the pain medication alleviated her symptoms. (Tr. 410). Her return to Dr. Hunt in February 2012 demonstrated a "completely unremarkable lab" with x-rays exhibiting no obvious abnormalities of significance. (Tr. 329). During her remaining visits in 2012, Hernandez indicated that medication controlled her TMJ, hypermobility syndrome, and anxiety. (Tr. 390-407). She also reported she was sleeping through the night without any side effects from medication. (Tr. 391, 401). Dr. Johnston continued her on Ambien, Baclofen, Celexia, Lortab, Xanax, and Lodine. (Tr. 393, 395, 402).

Hernandez's visits to Dr. Johnston in January and February 2013 portray that she retained control over her anxiety, TMJ, and hypermobility syndrome with medication. She stated she improved her ability to cope with daily stressors and that Ambien helped her insomnia. (Tr. 376, 378). These notes manifest an inconsistency with Dr. Johnston's April 2013 medical opinion, where he stated that Hernandez's chronic medical conditions render her "totally and permanently unable to carry out gainful employment" (Tr. 575). During her remaining visits to Dr. Johnston in 2013, Hernandez confirmed that her pain was doing "very well" with medication and was averaging around 4/10. (Tr. 355, 359, 367).

Plaintiff's treatment records, most of which related to jaw pain, contained some abnormal findings, but they consistently noted Plaintiff displayed "adequate pain control and . . . [was] able to function and do . . . [activities of daily living] without difficulty." (Tr. 355, 359, 367, 375, 378, 382, 386, 394, 398, 401, 404, 407, 410). She exhibited no acute distress (Tr. 345, 364, 372, 376, 379, 383, 390 - 91, 399, 402, 405, 408, 411), and she noted she was feeling "well." (Tr. 581, 584, 578, 587). She possessed a full range of motion in her extremities, (Tr. 605) or a full range of musculoskeletal motion and a negative straight leg raise test. (Tr. 369, 384, 387). She demonstrated normal (2/4) deep tendon reflexes of the lower extremities that were neurovascularly intact. (Tr. 360, 3 84, 387). She displayed normal (5/5) grip strength. (Tr. 369). A right shoulder and cervical x - ray both exhibited no acute osseous abnormality. (Tr. 610 - 11). She had a normal gait and station. (579, 584).

In 2014, Hernandez began visiting Dr. Wendy Gomez. (Tr. 578). In May 2014, Hernandez reported to Dr. Gomez with complaints of chest pain, heart palpitations, and pain located in the substernal area. (*Id.*) Dr. Gomez assessed her symptoms as acute bronchitis, allergic rhinitis, tobacco abuse, and wheezing, and prescribed Singulair and ProAir HFA. (Tr. 580). She reported back to Dr. Gomez in June 2014 with complaints of moderate chest pain that was worsening, and Dr. Gomez prescribed Robaxin, Tramadol HCI, and Clindamycin HCI (Tr. 581-82). Dr. Gomez took x-rays of

Hernandez's right shoulder and cervical spine, noting the images revealed "no acute osseous abnormalit[ies]." (Tr. 610-11).

During her visits to Dr. Gomez in September and October 2014, Hernandez complained of moderate joint pain, but she reported improvements in her pain over time. (Tr. 583, 586-88). During the most recently-reported medical visit in January 2015, Hernandez complained of chest pain in the central and right areas that manifested after a possible altercation with her son and daughter-in-law. (Tr. 600). She described her pain as moderate, and the chest x-ray indicated no acute cardiopulmonary abnormality. (Tr. 603).

In addition to the medical records' contrast with Dr. Johnston's assessment, Dr. Johnston's opinion that Hernandez is "totally and permanently unable to carry out gainful employment" invades the province of the ALJ and sustains no dispositive weight.

> According to 20 C.F.R. § 404.1527(d), the determination of whether an individual is disabled is reserved to the Commissioner, and no special significance will be given to an opinion on issues reserved to the Commissioner. Section (d)(2) provides that although the Commissioner will consider opinions from medical sources on issues such as the RFC and the application of vocational factors, the final responsibility for deciding those issues is reserved to the Commissioner.

*Pate v. Comm'r, Soc. Sec. Admin.*, 678 F. App'x. 833, 834 (11ᵗʰ Cir. 2017). That is, "the task of determining a claimant's . . . ability to work is within the province of the ALJ, not of doctors." *Robinson v. Astrue*, 365 F. App'x 993, 999 (11ᵗʰ Cir. 2010).

Based on this review, the ALJ properly articulated that Dr. Johnston's opinion was not consistent with or supported by Hernandez's treatment records, and thus substantial evidence buttresses the ALJ's accordance of no weight for the physician's opinion regarding Hernandez's alleged disability.

## B. The ALJ Assigned Proper Weight to the Examining Psychiatrist's Opinion

To determine the weight given to a medical opinion, an ALJ must consider several factors, including the examining relationship, the treatment relationship, the evidence presented to support the opinion, the consistency of the opinion with other evidence, and the specialization of the medical professional. 20 C.F.R. §404.1527(c); *see Davis v. Comm'r of Soc. Sec.*, 449 F. App'x 828, 832 (11ᵗʰ Cir. 2011)(stating that the ALJ will give more weight to the medical opinions of a source who has examined the plaintiff and opinions that are supported by medical signs and findings and are consistent with the overall "record as a whole"). The ALJ may reject the opinion of any physician when the evidence supports a contrary conclusion. *Hearn v. Comm'r of Soc. Sec.*, 619 F. App's 892, 895 (11ᵗʰ Cir. 2015)(citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1240 (11ᵗʰ Cir. 1983)).

Hernandez contends the ALJ improperly substituted his own opinion for that of Dr. Christopher Randolph, the Commissioner's examining psychiatrist, as he afford Dr. Randolph's opinion little weight.[4] The ALJ stated that the record evidence and Hernandez's testimony did not support more than moderate difficulties in social functioning. (Tr. 27). Contrary to Hernandez's arguments, the ALJ afforded proper weight to Dr. Randolph's opinion, and substantial evidence supports the ALJ's finding that Dr. Randolph's opinion concerning Hernandez's limitations and ability to work did not accord with his own evaluations or the record.

After examining Hernandez in November 2015, Dr. Randolph completed a Medical Source Statement of Ability to do Work-Related Activities (Mental) that concluded: (1) Hernandez's impairments affected her ability to understand, remember, and carry out instructions; (2) Hernandez faced extreme[5] restrictions in the ability to understand and remember complex instructions, to carry out complex instructions, and to make judgments on complex work-related decisions; (3) Hernandez faced marked[6]

---

[4] Hernandez argues that the ALJ rejected and gave little weight to Dr. Randolph's statement that "[i]n light of social avoidance/withdrawal/neurocognitive impairment as indicated on SLUMS, do not feel this claimant could return to work force in safe/productive manner." (Doc. 14 at 25). However, Hernandez incorrectly identified the opinion from Dr. Randolph that the ALJ considered. The ALJ considered the Medical Source statement that Dr. Randolph completed as a whole, not solely the single statement. (Tr. 647-49).

[5] According to the Medical Source Statement, "extreme" connotes "major limitation" and "no useful ability to function in this area." (Tr. 647).

[6] According to the Medical Source Statement, "marked" connotes "serious limitation" and "a substantial loss in the ability to effectively function." (Id.).

limitations in the ability to make judgments on simple work-related decisions; and (4) Hernandez faced moderate[7] limitations in the ability to understand, remember, and carry out simple instructions. (Tr. 647). In addition, Dr. Randolph referred to Hernandez's self-described issues with social avoidance and withdrawal as support for his opinion. (Tr. 646).

However, for each set of limitations, the form instructs the physician to identify the particular medical or clinical findings supporting the claimed limitation. Utilizing a partially-completed SLUMS examination, Dr. Randolph opined that Hernandez possesses "significant" cognitive impairments that underlie the limitations. (Tr. 647.) Dr. Randolph also opined that Hernandez faced "extreme" impairments in (1) her ability to respond appropriately to usual work situations and to changes in a routine work setting, and (2) her ability to interact appropriately with the public, supervisor(s), and coworkers. (Tr. 648). Dr. Randolph stated that Hernandez's impairments would also affect her social interactions and interpersonal relationships. (Id.) However, Dr. Randolph failed to depict any clinical findings on the form to offer support for these limitations.

The ALJ properly assigned little weight to Dr. Randolph's medical source opinion, and substantial evidence supports his decision. The ALJ stated that nothing in

---

[7] According to the Medical Source Statement, "moderate" connotes "more than a slight limitation in this area but the individual is still able to function satisfactorily." (Id.).

the claimant's treatment records supported Dr. Randolph's findings and that his conclusions appeared to be based solely on the claimant's report. (Tr. 27). Furthermore, the ALJ discussed in detail the inconsistencies between Dr. Randolph's findings and claimant's treatment records and statements. (*Id.*)

To wit, the ALJ referred to Hernandez's most recent medical appointments in October 2014 with Dr. Wendy Gomez and March 2015 with Dr. David Pelini, where both records indicated that Hernandez was alert, in no acute distress, and oriented to person, place, time, and events. Additionally, Hernandez underwent a consultative examination with state-agency psychiatrist Dr. Robert Estock, and his notes indicate that although Hernandez deals with generalized anxiety disorder and anxiety, no symptoms were present during her exam. She remained alert and oriented, and he noted that her condition should "remain stable and she should be able to function at least as is reflected in this MRFC." (Tr. 77).

Dr. Estock's Mental Residual Functional Capacity Assessment noted that Hernandez faces moderate limitations regarding her ability to: (1) understand and remember detailed instructions; (2) carry out detailed instructions; (3) maintain attention and concentration for extended periods; (4) complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; (5) interact appropriately with the general public; (6) accept instructions and respond

appropriately to criticism from supervisors; and (7) respond appropriately to changes in the work setting. (Tr. 82-83). Dr. Estock's findings bolster the ALJ's decision to assign little weight to Dr. Randolph's opinion.

Hernandez relies on her medical records from visits to Dr. Johnston, nearly all of which contain Dr. Johnston's assessment that Hernandez took medication to treat her anxiety since 2010. The ALJ noted that Hernandez suffers from anxiety, yet these records consistently demonstrated that Hernandez's anxiety was well-treated with medication, and she exhibited a calm mood and stable nerves, (Tr. 359, 375, 378, 382, 386, 390, 394, 398, 401, 407, 410, 413, 419-20, 423, 426, 429, 341), rather than assessments of isolation, avoidance, etc., that she reported to Dr. Randolph.   (Tr. 645). She denied any additional symptoms, such as general fatigue or malaise, and her sleep generally improved with medication. These records contrast the statements rendered during her visit with Dr. Randolph, where Hernandez complained of worsening anxiety over the years and issues with social interactions and interpersonal relationships.

The ALJ also observed that Hernandez failed to report all of her activities to Dr. Randolph, such as caring for her step-father and grandmother, activities with the volunteer fire department (not just the fact she was involved with the department), and her most recent work activity after 2011. (*Id.*) The ALJ held a supplemental hearing to discuss some inconsistencies in Hernandez's report to Dr. Randolph, yet he did not find her answers satisfactory. (Tr. 42).

In addition, Hernandez testified at the ALJ hearing that she enjoyed working as a certified nursing assistant, yet her physical limitations prevented her from continuing her job. (Tr. 65). Although this testimony indicates the extent of Hernandez's impairments, it also depicts her level of effective social functioning. The ALJ cited this testimony not to demonstrate Hernandez only complained of physical limitations, but to portray evidence undermining her assessment that she exhibited marked or severe mental limitations in social functions.

Based on Hernandez's medical record and her testimony, substantial evidence supports the ALJ's decision to grant little weight to Dr. Randolph's opinion.

## C. The ALJ Properly Found that Hernandez's Mental Impairments Do Not Meet or Medically Equal Listing 12.04 and 12.06.

To meet the requirements of a Listing, Hernandez must "have a medically determinable impairment(s) that satisfies all of the criteria in the listing." 20 C.F.R. § 404.1525(d). The Listings of Impairments in the Social Security Regulations identify impairments so severe as to prevent a person from engaging in gainful activity. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1. If the claimant claims an impairment that equals a listed impairment, the claimant must present evidence that describes how the impairment possesses such an equivalency. *Armstrong v. Comm'r of Soc. Sec.*, 546 F. App'x 891, 894 (11th Cir. 2013)(citing *Wilkinson ex rel. Wilkinson v. Bowen*, 847 F.2d 660, 662 (11th Cir. 1987)). If Hernandez meets a listed impairment or otherwise establishes an

equivalence, the regulations conclusively presume a disability. *See* 20 C.F.R. §

416.920(d). If an impairment manifests only some of the criteria, then it does not

qualify, no matter how severe the impairment. *Nichols v. Comm'r of Soc. Sec.,* 679 F. App'x

792, 795 (citing *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990)).

At step three, the ALJ concluded that Hernandez's impairments do not meet the

criteria for Listings 12.04 and 12.06. (Tr. 26). Listing 12.04 establishes the criteria for an

Affective Disorder impairment, 20 C.F.R. § Pt. 404, Subpt. P, App'x 1, §12.04. In

relevant part, Listing 12.04 states:

> Characterized by a disturbance of mood, accompanied by a
> full or partial manic or depressive syndrome. Mood refers to
> a prolonged emotion that colors the whole psychic life; it
> generally involves either depression or elation.
>
> The required level of severity for these disorders is met when
> the requirements in both A and B are satisfied, or when the
> requirements in C are satisfied.
>
> A. Medically documented persistence, either continuous or
>      intermittent, of one of the following:
>      1. Depressive syndrome, characterized by at least
>         four of the following:
>         a. Anhedonia or pervasive loss of interest in
>             almost all activities; or
>         b.  Appetite disturbance with change in
>             weight; or
>         c.  Sleep disturbance; or
>         d.  Psychomotor agitation or retardation; or
>         e.  Decreased energy; or
>         f.  Feelings of guilt or worthlessness; or
>         g.  Difficulty concentrating or thinking; or
>         h.  Thoughts of suicide; or

           i.    Hallucinations, delusions, or paranoid thinking; or

* * *

AND

B. Resulting in at least two of the following:
1. Marked restriction of activities of daily living; or
2. Marked difficulties in maintaining social functioning;
3. Marked difficulties in maintaining concentration, persistence, or pace; or
4. Repeated episodes of decompensation, each of extended duration

*Id.*

Listing 12.06 establishes the criteria for an Anxiety Related Disorder impairment.

20 C.F.R. § Pt. 404, Subpt. P, App'x 1, § 12.06. In relevant part, Listing 12.06 states:

In these disorders anxiety is either the predominant disturbance or it is experienced if the individual attempts to master symptoms; for example, confronting the dreaded object or situation in a phobic disorder or resisting the obsessions or compulsions in obsessive compulsive disorders.

The required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in both A and C are satisfied.

A. Medically documented findings of at least one of the following:
1. Generalized persistent anxiety accompanied by three out of four of the following signs or symptoms:
a. Motor tension; or
b. Autonomic hyperactivity; or

        c.    Apprehensive expectation; or
        d.    Vigilance and scanning . . .
  AND
  B.  Resulting in at least two of the following . . . [same four
      options in Subsection B of Listing 12.04]
  OR
  C.  Resulting in complete inability to function independently
      outside the area of one's home.

*Id.*

Hernandez argues that the ALJ erred in finding that she does not meet the criteria for Listings 12.04 and 12.06. As stated above, to meet the criteria of subsection B of Listings 12.04 and 12.06, Hernandez must show a marked restriction in two of the following areas: activities of daily living; difficulties in maintaining social functioning; and difficulties in concentration, persistence, or pace. 20 C.F.R. § Pt. 404, Subpt. P, App. 1 §§ 12.04, 12.06.[8]

The evidence does not demonstrate Hernandez met Listing 12.04A's criteria. The evidence demonstrates Hernandez had sleep disturbance (insomnia) on occasion, yet most notes indicate she was doing well with insomnia or had improved sleep with medication. (Tr. 359, 367, 371, 375, 378, 382, 386, 390, 394, 398, 401, 407, 410, 413, 420, 423, 426, 429, 431 ). A condition controlled by medication is not disabling. *See Dawkins v. Bowen*, 848 F.2d 1211, 1213 (11th Cir. 1988).

---

[8] A "marked" limitation or difficulty means more than moderate but less than extreme. A marked limitation may arise when several activities or functions are impaired, or even when only one is impaired, as long as the degree of limitation is such as to interfere seriously with the ability to function independently, appropriately, effectively, and on a sustained basis. 20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 12.00(C).

Hernandez also told Dr. Randolph in 2015 she had issues with energy and concentration. (Tr. 645). This note contrasts with Hernandez's denial of general fatigue or malaise throughout the relevant period. (Tr. 360, 368, 372, 376, 379, 383, 387, 391, 395, 399, 402, 408, 411, 413, 420, 423, 426, 429, 431).

Furthermore, the evidence does not portray Hernandez exhibited at least one more of the symptoms in Listing 12.04A1. Hernandez denied hallucinations, delusions, and paranoid thinking. (Tr. 372). She also consistently denied suicidal thoughts. (Tr. 359, 367, 375, 378, 382, 386, 390, 394, 398, 401, 407, 410, 413, 419, 420, 423, 426, 429, 431).

Furthermore, substantial evidence supports the ALJ's determination that Hernandez did not satisfy Listings 12.04B or 12.06B. As to the first, section B category regarding daily living activities, the ALJ determined Hernandez exhibited moderate restrictions. (Tr. 26). The ALJ relied upon Dr. Estock's report, which also found moderate restrictions in this criteria. (Tr. 82). The ALJ noted that Dr. Randolph provided no comment on activities of daily living, and that Hernandez possessed no history of mental health treatment except for medication treatment. (Tr. 27).

As for section B's second category regarding social functioning, the ALJ determined Hernandez exhibited moderate difficulties. (Tr. 27). The ALJ noted Dr. Estock found Hernandez only displayed mild difficulties in maintaining social functioning, and Dr. Randolph opined that Hernandez's ability to interact with the

public, co-workers, and supervisors was "extremely impaired." (*Id.*) However, the ALJ explained that Dr. Randolph appeared to base his conclusions solely on Hernandez's report of her symptoms, as nothing in her treatment records supported this finding. (*Id.*) The ALJ also referred to Hernandez's failure to report to Dr. Randolph all of her activities, such as caring for loved ones and volunteering at the fire department.

As to section B's third category regarding difficulties in concentration, persistence, or pace, the ALJ determined Hernandez exhibited moderate difficulties. Referring to Dr. Estock's report, the ALJ noted he found Hernandez only had mild difficulties in maintaining concentration, persistence, or pace. The ALJ also highlighted Hernandez's extensive medical records, which revealed normal mental status examinations. (Tr. 27).

Finally, as for section B's fourth category the ALJ stated Hernandez had not experienced any episodes of decompensation of extended duration. Because Hernandez's mental impairments did not cause at least two "marked" limitations or one "marked" limitation with repeated episodes of decompensation of extended duration, she failed to meet the paragraph B criteria for Listings 12.04 and 12.06.

Furthermore, substantial evidence reveals Hernandez did not satisfy the criteria for Listing 12.04C. The record does not demonstrate a complete inability to function independently outside the area of her home. Hernandez cared for her mother and step father, and volunteered at the fire department. (Tr. 43). She reported she could go

out alone. (Tr. 253). She reported going to the library with her boys, and she went to the Dollar Store once a week. (Tr. 254). She said she did not need someone to accompany her places, although she felt more secure. (Tr. 254). She worked cleaning houses in 2011, 2012, and 2013, after her alleged onset date. (Tr. 49 - 50).

Hernandez refers to her extensive medical records with Dr. Johnston, highlighting the consistent complaints of anxiety and insomnia. However, these same records reported that Hernandez's impairments improved with medication. (Tr. 359, 367, 371, 375, 378, 382, 386, 390, 394, 398, 401, 407, 410, 413, 420, 423, 426, 429, 431). She denied homicidal and suicidal ideations, and she reported improved ability to cope with daily stressors and rest.

Hernandez also references testimony detailing her struggles with anxiety and depression. (Tr. 64). However, Hernandez's reported activities also support the ALJ's findings regarding her limitations. Hernandez supported her parents and regularly volunteered at the fire department until the year before her supplemental hearing in March 2016. (Tr. 43). She participated in weekly activities, such as going to the library and the Dollar Store. (Tr. 254). Hernandez also cleaned houses until 2013, past her alleged onset date. (Tr. 49-50).

The court finds that substantial evidence supports the ALJ's findings regarding Hernandez's mental impairment limitations, and that Hernandez failed to prove that her impairments met Listings 12.04 and 12.06.

### D. The ALJ Properly Assessed Hernandez's Credibility and Properly Applied the Pain Standard

"To establish disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part test by showing: '(1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain.'" *Zuba-Ingram v. Comm'r of Soc. Sec.*, 600 F. App'x 650, 656 (11th Cir. 2015) (quoting *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (*per curiam*)). A claimant's testimony coupled with evidence that meets this standard "is itself sufficient to support a finding of disability." *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (citation omitted).

If the ALJ discredits a claimant's subjective testimony, the ALJ "must articulate explicit and adequate reasons for doing so." *Wilson*, 284 F.3d at 1225. "While an adequate credibility finding need not cite particular phrases or formulations[,] broad findings that a claimant lacked credibility . . . are not enough . . . " *Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995) (*per curiam*); *see* SSR 96-7p, 1996 WL 374186 at *2 ("The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave

to the individual's statements and the reasons for that weight.").[9] Nonetheless, credibility determinations remain within the province of the Commissioner, not the courts. *Taylor v. Comm'r of Soc. Sec.*, 213 F. App'x 778, 779 (11th Cir. 2006).

In his opinion, the ALJ summarized Hernandez's hearing testimony regarding her pain. (Tr. 28-29). The ALJ found that Hernandez's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but her statements concerning the intensity, persistence, and limiting effects of these symptoms "are not entirely consistent with the medical evidence and other evidence in this record." (Tr. 29). The ALJ detailed Hernandez's medical evidence to support his decision, noting her pain significantly improved with medication and Hernandez could function, work, and fulfill daily living activities without difficulty. (Tr. 29).

In February 2011, Hernandez reported for her follow-up appointment on her TMJ, generalized anxiety disorder, and migraine headaches diagnoses, and treatment notes indicate she was alert and oriented to person, place, and time. (Tr. 438-39).

---

[9] SSR 16-3p rescinded SSR 96-7p, effective March 28, 2016. However, because SSR 96-7p constituted the relevant standard at the time of the ALJ's decision, the court reviews this matter using SSR 96-7p. *See Hargress v. Soc. Sec. Admin., Comm'r*, 883 F.3d 1302 (11th Cir. 2018); *Wood v. Berryhill*, No. 4:15-CV-1248-LSC, 2017 WL 1196951, at *7-*9 (N.D. Ala. Mar. 31, 2017).

Furthermore, the Eleventh Circuit ruled that SSR 16-3p does not apply retroactively. *See Hargress v. Soc. Sec. Admin.*, 874 F.3d 1284, 1289 (11th Cir. 2017), *opinion vacated and superseded by Hargress*, 883 F.3d at 1308 (holding that SSR 16-3p contains no language suggesting retroactive application; rather, its explicit effective date "actually points the other way.")

Throughout 2011, Hernandez also complained of joint pain and insomnia, but her pain ranged between a 0/10 and 3/10 when she took her medication. (Tr. 413-422).

In January 2012, she reported to Dr. Hunt with complaints of joint pain, and he diagnosed her with joint hypermobility and arthralgias. (Tr. 329). Her lab work was unremarkable, the bone scan demonstrated increased uptake at the third right metacarpophalangeal joint, and x-rays of her hands exhibited no obvious abnormalities. (*Id.*) During her visits to Dr. Johnston in 2012, Hernandez consistently reported that her joint pain and anxiety was well-controlled and she could perform activities. (Tr. 390, 401, 404, 407). During a musculoskeletal examination of Hernandez in November 2012, Dr. Johnston noted that Hernandez felt diffuse pain in her hand joints, but she reported a 5/5 strength in her hands. She also exhibited full range of motion with increased pain at the extreme points of her motion. (Tr. 386-89). On medication, her pain never exceeded a 5/10. (Tr. 355, 359, 367, 375, 378 ).

Hernandez visited Dr. Gomez in May 2014 with complaints of chest pain, but Dr. Gomez reported that she was in no acute distress and was fully oriented. Hernandez presented a normal physical examination, and Dr. Gomez diagnosed her with acute bronchitis, allergic rhinitis, tobacco abuse, and wheezing. (Tr. 579). She reported to Marshall Medical Center in June 2014 with complaints of shoulder and neck pain, and x-rays revealed no acute osseous abnormalities. (Tr. 610-11). During a follow-up appointment with Dr. Gomez in September 2014, Hernandez complained of moderate

arthralgias and symptoms associated with fatigue and weakness. (Tr. 584). However, Dr. Gomez reported that during the physical examination Hernandez did not exhibit acute distress and she remained oriented. Hernandez reported normal strength with no atrophy, spasticity, or tremors, and she maintained a normal gait and station. (*Id.*) Her visit to Dr. Gomez in October 2014 revealed a normal physical examination. (Tr. 586-88).

In January 2015, Hernandez visited Marshall Medical Center South with complaints of chest pain, and the emergency department diagnosed her with chest well pain and costochondritis. (Tr. 600-03). Furthermore, chest x-rays found no acute cardiopulmonary abnormality. (Tr. 603).

The ALJ offered adequate explanations for discounting Hernandez's testimony as to her pain and weakness. Further, the ALJ cited objective medical evidence refuting the severity of the alleged pain. Thus, the ALJ did not err in assessing Hernandez's credibility or applying the pain standard.

**E. Motion to Correct the Record**

Hernandez asks the court to correct the record by adding the thirty-page letter brief to the Appeals Council, dated September 28, 2016. Hernandez asserts that the Appeals Council failed to consider this brief when it denied review on November 8, 2016, as the brief has been omitted from the record. (Doc. 13 at 1). The Commissioner asserts the Social Security Act requires filing of "a certified copy of the transcript of the

record including the evidence upon which the findings and decision complained of are based," and thus the administrative record only includes the evidence that was before the Commissioner when she decided the challenge. (Doc. 15 at 1-2).

In any event, the brief's omission from the record bears no consequences for the undersigned's decision. The court finds that Hernandez's letter brief does not constitute "evidence" for purposes of the Social Security Act. The brief itself provides a summary of the medical evidence in the record, yet it does not include any argument which is omitted from Hernandez's contentions in this forum.

Therefore, upon the foregoing resolution of those contentions the court **DENIES** Hernandez's Motion to Correct the Record as **MOOT.**

### Conclusion

For the foregoing reasons, the court **AFFIRMS** the Commissioner's decision.

**DONE** this 26th day of March, 2018.

_____
HERMAN N. JOHNSON, JR.
UNITED STATES MAGISTRATE JUDGE